Bennie F. ZIMMERMAN, As Husband and Next Friend of Virginia Lee Zimmerman, Appellant,

v.

NATIONAL HOME LIFE ASSURANCE COMPANY, Appellee.

No. 5390.

Court of Civil Appeals of Texas, Waco.

Dec. 19, 1974.

Rehearing Denied Jan. 23, 1975.

McCracken, Smith, Shields & Taylor, H. C. McCracken, Jr., Carrollton, for appellant.

Locke, Purnell, Boren, Laney & Neely, Larry M. Lesh, Dallas, for appellee.

OPINION

McDONALD, Chief Justice.

This is an appeal by appellant (plaintiff) Zimmerman from take nothing judgment against appellee (defendant) Insurance Company in a suit on a hospitalization indemnity policy.

Plaintiff alleged his wife the insured was entitled to $500. per month benefits while confined in a hospital, that she has been confined in a hospital since January 5, 1972; that defendant paid the benefits to September 5, 1972, but has refused to pay since that date.

Defendant denied plaintiff's wife is confined to a "hospital" as defined by the policy, and denied she was a "resident patient" as defined by the policy.

Trial was before the court which rendered judgment plaintiff take nothing, and

filed Findings of Fact and Conclusions of Law pertinent of which are summarized as follows:

### Findings of Fact

1) Defendant had issued plaintiff its hospitalization indemnity policy which provided in material part:

"Monthly Hospital Benefit: When injury or sickness * * * necessitates hospital confinement of a covered member as a resident patient and under the care of a physician * * * we will pay * * * $500. per month subject to the following:

" * * *

" 'Hospital' means an institution whose principal purpose is providing medical care and treatment for injured and sick persons on a resident patient basis; and which maintains facilities for medical diagnosis and treatment of such persons; by or under the supervision of a staff of physicians; and which provides 24 hour a day nursing service by and under the supervision of registered nurses; and which provides facilities for major surgery; and *which is not*[1] other than incidentally, a place of rest, a place for the aged, a place for drug addicts, a place for alcoholics, a mental institution, a tuberculosis sanitarium and/or hospital, or a *nursing, convalescent*[1] *rehabilitation or extended care facility.*[1] * * *

" 'Resident Patient' means one who is confined to a hospital and for whom a charge is made by the hospital for each day so confined. *This does not*[1] *include one* whose confinement is not necessary for medical treatment or *who is occupying any form of rest, nursing, convalescent, rehabilitation or extended care facility."*[1]

2) Brookhaven Medical Center is designed to provide a complete line of services. It consists of 3 buildings, each separated by a walkway; the west building is the "Medical Office Building"; the center building is the "Skilled Nursing Facility"; and the east building is the "General Hospital". The 3 facilities are owned by R & D Medical Corporation.

3) The Skilled Nursing Facility in the Brookhaven Medical Center is primarily a nursing facility providing 24-hour skilled nursing care. It has no x-ray or major surgery facilities, such facilities being situated within the General Hospital.

4) The Skilled Nursing Facility of Brookhaven Medical Center maintains records on its patients separate and apart from the records maintained by the General Hospital on its patients.

5) When a patient moves from the General Hospital to the Skilled Nursing Facility, records of the Hospital will reflect the patient was discharged from the hospital, and records of the Skilled Nursing Facility will reflect the patient was admitted to the Skill Nursing Facility; and vice versa.

6) Skilled Nursing Facility provides nursing care to patients who have been discharged from hospitals other than the General Hospital at Brookhaven Medical Center.

7) On January 5, 1972 plaintiff's wife entered the General Hospital facility of Brookhaven Medical Center for fracture of her elbow. While in surgery for the fracture she suffered cardiac arrest resulting in a neurologically serious condition.

8) As a result she was on January 20, 1972 discharged from Brookhaven General Hospital and admitted to Baylor University Medical Center. She remained in Baylor through September 5, 1972 for evaluation and treatment of her neurological condition.

1. Emphasis added.

9) On September 5, 1972 she was discharged from Baylor Hospital and admitted to the Skilled Nursing Facility of the Brookhaven Medical Center because her doctor "felt at that time that she had received the maximum benefit from a hospital, as far as improvements. She was transferred to the Nursing Care Center for continued nursing care." Patients are transferred from a hospital to a nursing home such as the Skilled Nursing Facility of the Brookhaven Medical Center when the patient appears to have received all the hospital care that might help them at the time.

10) If Mrs. Zimmerman needed hospital care and treatment Dr. Jenike would remove her from the Skilled Nursing Facility to Baylor Hospital. He would not allow her to stay in the nursing home.

11) Since September 5, 1972 Mrs. Zimmerman has been in the Skilled Nursing Facility of the Brookhaven Medical Center receiving 24-hour skilled nursing care.

12) Defendant paid plaintiff for the time Mrs. Zimmerman spent in General Hospital of Brookhaven Medical Center and Baylor Hospital.

13) The Skilled Nursing Facility in which Mrs. Zimmerman has been confined since September 5, 1972 is a "nursing, convalescent, rehabilitation or extended care facility" and therefore does not constitute a "hospital" within the meaning of the policy.

14) Mrs. Zimmerman since September 5, 1972 has not been a "resident patient" within the meaning of the policy because she is occupying a "form of rest, nursing, convalescent, rehabilitation or extended care facility".

*Conclusions of Law*

1) Because the institution in which Mrs. Zimmerman has been confined since September 5, 1972 is not a "hospital" within the meaning of the policy, and because since September 5, 1972 Mrs. Zimmerman has not been a "resident patient" as defined by the policy, no benefits are payable.

2) Because no benefits are payable defendant is not liable for any penalty or attorney fees.

Appellant appeals on 3 points contending the trial court erred:

1) In finding as a matter of law that the institution in which insured is confined was not a "hospital" and that the insured was not a "resident patient" within the meaning of the policy.

2) *In holding no benefits are payable under the policy and that appellee is not liable for attorneys' fees.*

3) In failing to resolve ambiguities in the insurance contract in favor of insured.

In essence the policy provides for payments if the insured is confined to a hospital, but not if the insured is confined to a nursing, convalescent, rehabilitation or extended care facility.

Appellant urges that the trial court's error arose from its failure to consider the Skilled Nursing Facility as a part of the "hospital" which is contained within the Brookhaven Medical Center, and that the two sections should not be considered separate.

Insured was confined to the Skilled Nursing Facility of Brookhaven Medical Center, which center contained a hospital, but *she was confined to Skilled Nursing Facility.* The term "facility" is defined to mean "something designed, built, installed, etc., to serve a specific function affording a convenience or service" Webster's Third International Dictionary Unabridged.

The fact that the owners of the Medical Center also owned a Hospital and that same was nearby and adjacent to the Skilled

Nursing Facility is persuasive but not determinative.

■ The provisions of an insurance contract will be construed against the insurer, the author of the contract, where the language is ambiguous and uncertain. In the absence of ambiguity insurance contracts are to be construed generally as other contracts. And the terms of the contract are to be given their ordinary meaning unless there are other provisions indicating a contrary intention of the parties. Southern Life and Health Ins. Co. v. Simon, Tex., 416 S.W.2d 793; Guardian Life Ins. Co. of America v. Scott, Tex., 405 S.W.2d 64; General American Indemnity Co. v. Pepper, 161 Tex. 263, 339 S.W.2d 660.

In Scott, supra the court further held "A policy which provides coverage only if it 'has' stated facilities does not mean there is coverage if it 'has access' to such facilities in another institution at a different place."

■ Here the policy excludes coverage if the insured is occupying any form of rest, nursing, convalescent, rehabilitation or extended care facility. Such language to us is plain, clear and unambiguous.

Mrs. Zimmerman was confined to a nursing, convalescent, rehabilitation or extended care facility. She had reached, at least for the time, the maximum recuperation afforded by Baylor Hospital, and was transferred to the Skilled Nursing Facility of Brookhaven Medical Center, which was in essence a nursing home. As noted the fact that Brookhaven had a "hospital" facility nearby and available cannot alter the fact that the insured for the period of time sued for was not occupying such "hospital" facility, within the terms of the policy, but was occupying the nursing or extended care facility.

Appellant's points are overruled.

Affirmed.