Harvey A. STEWART et ux., Petitioners,

v.

VANGUARD INSURANCE
COMPANY, Respondent.

No. B–9103.

Supreme Court of Texas.

July 23, 1980.

Halm, Pletcher & Hogan, Michael Y. Saunders and Stephen W. Hanks, Houston, for petitioners.

Fulbright & Jaworski, John E. Williams, Jr., Houston, for respondent.

POPE, Justice.

Vanguard Insurance Company filed this suit seeking a declaratory judgment that its policy did not cover an aircraft that crashed on February 8, 1975 at Ruidoso, New Mexico. The defendants, Harvey A. Stewart and wife, Dorothy, counterclaimed to recover their medical expenses and the damages to their Cessna 180, the plane that crashed. The trial court rendered judgment for the Stewarts upon a favorable jury verdict, but the court of civil appeals reversed the judgment and rendered judgment that the Stewarts take nothing. 593 S.W.2d 736. We affirm the judgment of the court of civil appeals.

The question presented by this appeal is whether Gerald Greak, who was the pilot in command of the Stewart's Cessna 180 at the time it crashed, had logged 10 hours as a pilot in command as the terms of Vanguard's policy required. These are the provisions:

In consideration of the premium at which this policy is issued, it is hereby agreed that Item 7. of the Declarations shall be amended to read as set forth below:

Item 7. When the aircraft is operated while in motion, insurance will be effective only when said operation is by a pilot designated below who is possessed of a current and valid pilot certificate of the kind specified with appropriate ratings and a current medical certificate, all as required by the Federal Aviation Administration for the flight involved and who meets the additional requirements set forth below:

A pilot approved by the Named Insured provided he possesses a private or commercial pilot certificate and has logged at least 750 flying hours as pilot in command which includes at least 50 hours in single engine aircraft equipped with a conventional landing gear and 10 hours in Cessna 180 aircraft.

Harvey A. Stewart owned the Cessna 180 and was the named insured in the policy he had with Vanguard Insurance Company. Stewart and his wife, Dorothy, departed the Houston Intercontinental Airport with their friends, Gerald Greak and his wife, Elizabeth, in the plane destined for Ruidoso, New Mexico. The Cessna had dual controls, and Mr. Stewart and Mr. Greak shared time during the flight as the pilot in control.

Both Mr. Stewart and Mr. Greak were experienced pilots. Mr. Stewart had several hundred hours of experience as the pilot in command of his Cessna 180, but he was not a qualified pilot because he did not have a current medical certificate. This fact is not disputed, and no contention is made that he was the pilot in command at the time of the crash.

Mr. Stewart was the pilot in control on the morning of February 8, 1975, as the plane approached the landing strip at Ruidoso, New Mexico. Stewart's approach was too high and too fast, and the plane made several violent bounces as it touched down. In the crisis, Stewart, according to the evidence, froze and was in a state of shock. Greak struck Stewart and for a short interval took control of the plane, but not in time to avoid striking a pine tree as he tried to gain altitude at the end of the runway.

The jury found on the basis of these stated facts that Greak was the pilot in command at the time of the crash and also that he had logged at least 10 hours in a Cessna 180 as pilot in command. The only question that is now presented is whether there is any evidence to support the second finding. Greak's mere presence as a passenger in that class of plane for that period of time is not our inquiry; the policy requires his logging that much time as the pilot in command.

The term "logged"[1] has an interesting origin, but it has come to mean that some kind of a record is made of an event. *Marson Coal Co. v. Insurance Co.*, 210 S.E.2d 747 (W.Va.1974). The Random House Dictionary of the English Language, p. 842 (Unabridged ed. 1967), defines the word:

3. *Naut.* any of various devices for determining the speed of a vessel, as a ship log or patent log. 4. any of various records, made in rough or finished form,

concerning a trip made by a vessel or aircraft and dealing with particulars of navigation, weather, engine performance, discipline, and other pertinent details; logbook. 5. *Motion Pictures.* an account describing or denoting each shot as it is taken, written down during production and referred to in editing the film. 6. a register of the operation of a machine. 7. a record kept during the drilling of a well, esp. of the geological formations penetrated. 8. *Radio and Television.* a written account of everything transmitted by a station or network . . . . . . . 11. to enter in a log; compile; amass; keep a record of: *to log a day's events.*

The common-sense meaning of the term is that a record, however informal, is made of the event. The insurance policy required that the pilot have logged 750 hours as pilot in command. Fifty of these hours were required to have been spent in command of a single-engine plane with conventional landing gear, and 10 of the hours were required to have been spent in command of a Cessna 180. Human memory is so frail that a record needs to be made of the time, duration, point of departure, and destination of the flights during which the 750 hours are accumulated. It is the record that gives reliability to the required time. Both Mr. Stewart and Mr. Greak had logbooks, and they had their logbooks with them on this flight. Mr. Stewart acknowledged the purpose of making a record in the logbook in his answer to the request to state the purpose of a logbook:

It is a logbook that pilots are required to keep and fill out with your I.D. and so on in the front of it and after you land from each flight you should, and you are supposed to put down the date, the aircraft type, the identification, why you left

1. The use of "logs" originated sometime prior to the fifteenth century when mariners devised a means to keep track of a ship's speed and distance. They would heave overboard a quadrant of wood loaded in such a manner that it would float upright. It was connected to a line wound around a reel with knots tied to the line at designated intervals. The amount of line

used in a time span measured by a sand dial enabled the ship's officers to estimate their speed and location. 14 ENCYCLOPAEDIA BRITANNICA 299 (1954); W. & M. MORRIS, DICTIONARY OF WORD AND PHRASE ORIGINS (1961); THE BLUEJACKETS' MANUAL (United States Navy, 11th ed. 1943).

from where you went to and any remarks, number of landings and the type, whether it's a single engine or multi-engine and then you start putting the number of hours, whether day, night, instrument or whether you were pilot in command or whether anyone else flew and the remarks, but, anyway the total hours of the flight breaking down with the pilot in command being you, the number of hours you flew.

Mr. Stewart testified that it was his practice to make the record right after a flight because he might otherwise forget the exact times, and even then he sometimes made mistakes. He had flown a total of 1,300 hours, but he said he could not remember the facts about each hour.

Mr. Greak lost his logbook in the crash, but he was permitted to testify about the entries in the book after laying the proper predicate to show that it was lost. *Marson Coal Co. v. Insurance Co., supra.* He had logged more than 1,300 hours as pilot in command of various planes, but he testified that the only Cessna 180 he had ever flown was the one that crashed. There is evidence that a Cessna 180 had unique problems on take-off and landing. He testified that he at no time had ever made any record or logged any time as pilot in command of that aircraft. By treating "logged" as meaning only that he had flown in that plane, Mr. Greak testified that he "had no more than six hours in a Cessna 180" when the plane left Houston the night before the crash occurring on the next morning.

Not all time spent in flight is logged time, nor need it be; but logged time is given greater credence, and the FAA counts only that time which is logged. In *Republic Aero, Inc. v. North American Underwriters,* 462 S.W.2d 635 (Tex.Civ.App.—Waco 1970, no writ), the court counted all flight time even though it was not logged and held that a pilot had met the policy requirement that he have 500 hours of total time. The court stated that if the defendant insurance company had wished to recognize for insurance purposes only those

hours also recognized by the FAA for certificate or rating purposes, it could have done so by placing a provision to this effect in the policy. In this case, the insurer did include that provision in the policy. It did so by requiring that "logged" time be included in the number of hours to be counted. *Republic National Life Ins. Co. v. Spillars,* 368 S.W.2d 92 (Tex.1963).

Stewart testified that during the trip from Houston to Ruidoso, he and Greak shared time as pilot in command, and he attributed from 3.1 to 6 hours to Greak as his share of this time in command. This means that Mr. Greak had accumulated 9.1 to 12 hours of time as pilot in command, 6 of which, accumulated before the plane left Houston, had not been recorded, and the rest of which might have been recorded but for the crash. Mr. Greak also testified, "There is no doubt in my mind that I myself flew that aircraft a minimum of 10 hours prior to the accident, not prior to that flight." He did not say, however, that he was the pilot in command.

To prove that Greak had flown the required 10 hours as pilot in command, Stewart also relies upon records that he made in his own logbook. Stewart testified that he and Greak had flown together in the plane on several occasions before the time of the crash. Stewart said that Greak was his instructor and that he could compute from his logbook as much as 12.1 hours during which Greak was pilot in command. Greak denies that he ever made any record or logged any time in Stewart's book. There is evidence that one who acts as a flight instructor may sign his student's logbook to certify the training that the student received. There is no evidence, however, that a student is authorized to log or to record in his student's logbook time which the instructor can credit to his own accrued logged time.

We affirm the judgment of the court of civil appeals since there is no evidence that Mr. Greak had logged 10 hours in a Cessna 180 as the pilot in command prior to the crash.