IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 06-0484
════════════
 
AIG Aviation (Texas), Inc. and National Union Fire Insurance Company of 
Pittsburgh, Pennsylvania, Petitioners,
 
v.
 
Holt Helicopters, Inc., 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fourth District of 
Texas
════════════════════════════════════════════════════
 
 
On Motion for Rehearing of 
Petition
 
 
            
Justice Willett, 
dissenting from the denial of the motion for rehearing of the 
petition.
 
            
This Court has held—recently and repeatedly—that insurance 
contracts should be enforced according to their express terms:
$          
          Healthcare 
insurance contracts—we enforce them as written.[1]
$          
          Homeowners 
insurance contracts—we enforce them as written.[2]           

$          
          Commercial general 
liability insurance contracts—we enforce them as written.[3]
Not so with 
aviation insurance contracts.  In Puckett v. U.S. Fire Insurance 
Co., we engrafted a causal-connection requirement into the policy, 
requiring the insurer to show that the insured’s breach actually caused the 
damage or accident.[4]  The Court held that while the 
policy unequivocally suspended coverage if there was no valid airworthiness 
certificate, public policy nonetheless trumped the contract’s express terms and 
barred the insurer from denying coverage if the insured’s violation of the 
aircraft-inspection requirement did not contribute to the crash.[5]  In short, Puckett granted an 
unbargained-for expansion of coverage in the face of a 
bargained-for exclusion from coverage.
            
Puckett’s judicial rewriting of the parties’ contract clashes 
head-on with our “modest, text-based approach” to interpreting contract 
language.[6]  As we have stressed, Texas courts must stick 
to what policies say, not what we wish they said.[7]  I agree with Chief Justice Pope’s 
spirited dissent in Puckett: “Courts are not in the business of writing 
insurance contracts.  Our duty is to apply unambiguous contracts as they 
are written.”[8]  We should either 
(1) overrule Puckett, (2) distinguish it,[9] or (3) explain forthrightly why we insist 
on applying a hazy, public policy-based interpretive standard to aviation 
insurance contracts (an area where public safety concerns should urge 
hard-and-fast enforcement of safety-related provisions).[10]
            
Puckett’s nontextual approach is starkly 
at odds with our insurance decisions generally, and with most American 
jurisdictions’ aviation-insurance decisions specifically.[11]  The Court should join the 
mainstream, not grant aviation contracts their own interpretive jet 
stream.  Because “we should strive for uniformity” in giving effect to 
unequivocal contract terms,[12] we should not apply one enforcement rule 
to aviation contracts and a different enforcement rule to all other 
contracts.
            
I would decide the case, and because the Court declines to do so, I 
respectfully dissent.
            

                        
___________________________________
                        
Don R. Willett
                        
Justice
 
OPINION 
DELIVERED:  January 11, 2008








[1] 
Fortis Benefits v. Cantu, 234 S.W.3d 642, 649 (Tex. 2007).

[2] 
Fiess v. State Farm Lloyds, 202 S.W.3d 
744, 746 (Tex. 
2006).

[3] 
Lamar Homes, Inc. v. Mid-Continent Cas. Co., ___ S.W.3d ___, ___  (Tex. 2007).

[4] 
678 S.W.2d 936, 938 (Tex. 1984).

[5] 
Id.

[6] 
Fortis Benefits, 234 S.W.3d at 649.

[7] 
Fiess, 202 S.W.3d at 753 ("[I]n construing 
insurance policies where the language is plain and unambiguous, courts must 
enforce the contract as made by the parties, and cannot make a new contract for 
them, nor change that which they have made under the guise of construction." 
(internal quotations omitted) (quoting E. Tex. Fire 
Ins. Co. v. Kempner, 27 S.W. 122, 122 (Tex. 1894))); Nat'l Union Fire 
Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995) ("The primary 
concern of a court in construing a written contract is to ascertain the true 
intent of the parties as expressed in the instrument."); R & P Enters. 
v. LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980).

[8] 
678 S.W. 2d at 940 (Pope, C.J., dissenting).

[9] 
Justice Duncan’s dissent in the court of appeals distinguished Puckett 
persuasively, pointing out how the policy exclusion in the instant case 
(requiring a minimum level of pilot experience) represented the “basis of the 
bargain,” while the missing airworthiness certificate in Puckett was 
deemed (inaccurately, in my view) a mere “technicality.”  198 S.W.3d 276, 288 (Duncan, J., dissenting).

[10] The anti-technicality statute—which 
forgives an insured’s breach or violation of the insurance policy unless it 
“contributed to cause the destruction of the property”—is facially inapplicable 
because it applies only to fire and personal property insurance, not to aviation 
insurance.  Tex. Ins. Code § 
862.054.

[11] See generally Noralyn O. Harlow, Annotation, Aviation Insurance: Causal 
Link Between Breach of Policy Provisions and Accident as Requisite to Avoid 
Insurer’s Liability, 48 A.L.R. 4th 778, 783 (1986) (“Most courts have 
agreed with the general rule that a causal link between the breach and the 
accident need not be proved where policy requirements relating to pilots are 
violated.”).

[12] Fiess, 
202 S.W.3d at 752.