**FARMERS INSURANCE EXCHANGE,**
Appellant,

v.

Bob GREENE, as Next Friend of
Lawayne Greene, Appellee.

No. 05–11–00487–CV.

Court of Appeals of Texas,
Dallas.

Aug. 2, 2012.

Rehearing Overruled Sept. 12, 2012.

Steven A. Springer, Stephen G. Good, Fee, Smith, Sharp & Vitullo, L.L.P., Dallas, TX, for Appellant.

Matthew Kasey Ratliff, Strasburger & Price LLP, Dallas, TX, William Michael Ucherek, II, D. Bradley Kizzia, Juneau, Boll, Stacy & Ucherek, PLLC, Addison, TX, for Appellee.

Before Justices O'NEILL, MARTIN RICHTER, and LANG–MIERS.

## OPINION

Opinion by Justice MARTIN RICHTER.

This breach of contract case against Farmers Insurance Exchange ("FIE") arises out of the denial of Lawyane Greene's claim for fire damage to her real property. The trial court granted partial summary judgment for Greene on her breach of contract claim, severed all remaining claims and defenses, and assigned the severed claims a separate cause number. On appeal, FIE asserts the trial court erred in denying its motion for summary judgment and granting partial summary judgment for Green on her contract claim because the trial court misinterpreted the vacancy provision in the policy and section 862.054 of the insurance code does not apply to Greene's claim. Because we conclude section 862.054 of the insurance code is inapplicable to Greene's claim for damages to her residential real property, FIE is not required to establish that the vacancy caused or contributed to any loss before asserting the vacancy clause as a defense to the denial of coverage for damage to the dwelling. Therefore, we reverse the trial court's judgment on the breach of contract claim and render judgment on this narrow issue.

## I. BACKGROUND

FIE issued a homeowner's insurance policy (the "Policy") to Greene. Section IA of the Policy provides coverage for damages to the "dwelling," defined as the

residence premises reflected on the declarations page. Section IB provides coverage for damage to personal property. Section II provides liability coverage that includes coverage for personal liability and medical payments to others. The Policy also contains a vacancy provision which suspends coverage for damage to the dwelling under section 1A sixty days after the dwelling becomes vacant.

In July 2007, four months prior to the loss at issue, Greene notified FIE that she was moving to a retirement community and placing her house on the market for sale. In November 2007, a fire spread from neighboring property to Greene's property, causing her to suffer a loss. Greene made a claim under the Policy for damages to her dwelling. Relying on the vacancy provision, FIE denied the claim.

Following the denial of her claim, Greene sued FIE to recover benefits under the Policy, attorney's fees, and penalties under the prompt payment statute. Greene also sued for extra-contractual damages, asserting claims for negligence, fraud, breach of the duty of good faith and fair dealing, and violations of the deceptive trade practices act and insurance code. FIE answered, and asserted that coverage for property damage was suspended under the Policy's vacancy clause and it "did not breach the policy by denying a claim for coverage that was suspended." FIE did not contend that Greene breached or violated the Policy by leaving the house vacant.

FIE moved for summary judgment "on all of [Greene's] claims." Specifically, FIE asserted that property damage coverage is suspended during a lengthy vacancy of the house, FIE is not required to show prejudice, there is no breach of contract, the insurance policy is not forfeited and Greene is not entitled to reformation. FIE further challenged Greene's extra-contractual claims for negligence, fraudulent nondisclosure, and violations of the deceptive trade practices act and insurance code. The trial court denied the motion.

Greene moved for partial summary judgment three times. In her first motion, Greene asserted that FIE owes her benefits under the Policy because she did not commit a substantial breach of the Policy and FIE suffered no prejudice as a result of her vacating the property. The trial court denied the motion.

In her second motion, Greene asserted that FIE is precluded from relying on the vacancy provision in the Policy because there is no evidence that FIE provided her with a copy of the Policy. Greene also urged the court to reconsider her previous argument—that FIE should not be allowed to rely on the vacancy condition without first establishing that it suffered prejudice. Greene subsequently filed a supplemental motion for summary judgment, re-urging the same arguments set forth in her second motion and adding the argument that section 862.054 of the insurance code prohibits denial of her claim absent a showing of prejudice.

Prior to the hearing, the parties stipulated that Greene's residence was vacant beginning July 20, 2007. FIE also entered into a limited stipulation that the vacancy did not contribute to cause the destruction of the property. The stipulation makes clear, however, that FIE's "continued position is that ... Greene did not breach or violate the policy provision."

On March 17, 2011, the trial court heard argument on whether FIE, in "asserting a policy defense based upon a vacancy clause ... could prevail on such a defense without establishing that such ... vacancy contributed to the loss...." The trial court concluded that it could not, and memorial-

ized its conclusion in an order that states, in pertinent part:

> Greene's ... violation of the purported vacancy clause does not render the policy void and does not constitute a defense to ... Greene's suit for loss without ... [FIE] establishing that any purported vacancy clause violation ... contributed to the loss at issue....

On March 21, 2011, the trial judge signed a final judgment which recited that it was "based on the Order dated March 17, 2011." The judgment awards Greene damages and attorney's fees on her breach of contract claim, and states that the parties agree to severance of all remaining claims and defenses so that a final appealable judgment can be entered. In an order of severance signed on the same date, the trial court again referenced the award to Greene on her breach of contract claim, and severed "all remaining claims, causes of action and defenses of the parties not specifically ruled upon by the court in its Final Judgment." This appeal followed.

## II.Analysis

### *Summary Judgment on the Breach of Contract Claim*

■ FIE contends the trial court erred in granting partial summary judgment for Green on her breach of contract claim because the trial court misinterpreted the vacancy provision in the policy and section 862.054 of the insurance code does not apply to Greene's claim. We review the trial court's grant of summary judgment de novo. *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). Where, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, in the event of trial court error, we are to render the judgment the trial court should have rendered. *FM Props. Operating Co. v.*

*City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

■ Our determination here involves two matters of construction—the Policy and the statute under which Greene contends the prejudice requirement arises. When interpreting an insurance policy, we utilize well-established principles which include construing the policy according to general rules of contract construction to ascertain the parties' intent. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 126 (Tex.2010) (citations omitted). In conducting our review, we presume the parties intend what the words of their contract say, examine the entire agreement, "seek to harmonize and give effect to all provisions so that none will be meaningless," attribute the ordinary and generally-accepted meaning to terms unless the policy shows the words are meant in a technical or different sense, and attempt to honor the agreement "by not remaking the contract by reading additional provisions into it." *Id.; Nat'l Union Fire Ins. Co. v. Crocker,* 246 S.W.3d 603, 606 (Tex.2008) ("Most importantly, we must give the policy's words their plain meaning, without inserting additional provisions into the contract."). If the policy language is worded so that it can be given definite legal meaning, it is not ambiguous and is construed as a matter of law. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). Even if parties interpret a policy differently, an insurance contract having a clear and definite meaning is not ambiguous as a matter of law. *Mid–Continent Cas. Co. v. Global Enercom Mgmt., Inc.,* 323 S.W.3d 151, 154 (Tex.2010) (citations omitted).

We review issues of statutory construction de novo. *Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 635 (Tex.2010). In construing statutes, our primary objective is to give effect

to the Legislature's intent. *Id.* (citing *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex.2009)). We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Id.* We presume that the legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind. *Id.* (citing *In re Caballero*, 272 S.W.3d 595, 599 (Tex.2008)). Courts should give effect to "every sentence, clause, and word of a statute so that no part thereof [will] be rendered superfluous." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex.2003).

We begin our analysis with an examination of the Policy. The vacancy clause at issue provides:

> If the insured moves from the dwelling and a substantial part of the personal property is removed from that dwelling, the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. This coverage will remain suspended during such vacancy.

■ In the court below, Greene asserted she did not commit a substantial breach of the Policy, and therefore FIE was not relieved of its obligation to pay benefits. But FIE did not argue or plead breach as a basis for its refusal to pay benefits. FIE agreed there was no breach, and asserted it did not breach the policy by denying a claim for coverage that was suspended. Concluding that FIE breached the contract, the trial court held that Greene "violated" the vacancy clause, and that the "violation" does not render the policy void.

■ FIE contends the trial court erred in its interpretation of the Policy.

We agree. The Policy language clearly and unambiguously provides that vacancy *suspends* certain coverage after sixty days. *See Barlow v. Allstate Texas Lloyds*, 2006 WL 1133878 at *3 (E.D.Tex.2006) (not designated for publication), *aff'd*, 214 Fed. Appx. 435 (5th Cir.2007). The vacancy clause does not provide a forfeiture of coverage; it suspends coverage under section 1A, while other coverage under the Policy remains in effect. *See Fitzpatrick v. Fire Exchange*, 2000 WL 567101 at *3 (Tex.App.-Dallas 2000, pet. denied) (not designated for publication). Thus, the vacancy clause functions as an exclusion; it excepts a specific condition (vacancy) from coverage. *See* BLACK'S LAW DICTIONARY 563 (9th ed.2009); *see also* 17 WILLISTON ON CONTRACTS § 49.11 (4th ed.1992) (exception or exclusion is a limitation on liability or carving out of certain types of loss to which coverage does not apply). The trial court concluded that Greene breached or "violated" the vacancy clause. But a breach of contract occurs when a party fails to perform an act that it has expressly or impliedly failed to perform. *Orix Capital Mkts., L.L.C. v. Wash. Mut. Bank*, 260 S.W.3d 620, 623 (Tex.App.-Dallas 2008, no pet.). There is no promised performance here. It follows that there can be no violation or breach. To conclude otherwise would be analogous to concluding that a homeowner with a policy excluding coverage for mold breaches the policy if the condition materializes.

■ Next, we consider whether section 862.054 of the insurance code applies to the vacancy clause. Greene argues, and the trial court concluded, that section 862.054 requires FIE to establish that Greene's "violation" contributed to cause the loss before it may assert the vacancy clause as a defense to the denial of cover-

age.[1] FIE responds that section 862.054 does not apply to real property.

Section 862.054, entitled "Fire Insurance: Breach by Insured; Personal Property Coverage" provides that an insured's breach or violation of a provision or condition in a policy does not constitute a defense to a suit for loss unless the violation contributed to the destruction of the property. Specifically, section 862.054 provides:

> Unless the breach or violation contributed to cause the destruction of the property, a breach or violation by the insured of a warranty, condition, or provision of a fire insurance policy or contract of insurance on personal property, or an application for the policy or contract:
> (1) does not render the policy or contract void; and
> (2) is not a defense to a suit for loss.

TEX. INS.CODE ANN. art. 862.054 (West 2009).

FIE relies on the title of the statute, "Fire Insurance: Breach by Insured; **Personal Property Coverage**" to support its position that the statute does not apply to real property loss. *Id.* (emphasis added). Greene responds that the body of the statute refers to fire insurance policies generally, and therefore applies to any type of property. We agree that the title suggests the Legislature intended to limit the statute's application to personal property coverage in a fire policy. And we acknowledge that some courts interpreting prior versions of the statute have concluded that it applies to personal property. *See Texas Farm Bureau Mut. Ins. Co. v. Carnes,* 416 S.W.2d 863, 865 (Tex.App.-Corpus Christi

1967, writ ref'd n.r.e.); *But see, Aetna Ins. Co. v. Lewis,* 204 S.W. 1170, 1170 (Tex.Civ. App.-Austin 1918, writ ref'd) (considering prior version of statute and concluding statute applicable to a defense that property was vacant in violation of promissory warranty). On the other hand, we also note that the body of the statute refers disjunctively to ". . . a fire insurance policy **or** contract of insurance on personal property." *Id.* (emphasis added).[2]

But our inquiry in the present case does not depend upon whether the statutory language pertains only to fire insurance on personal property or to all types of property covered by fire insurance. Regardless of the type of coverage to which the statute may apply, the statute clearly requires a "breach or violation" of a "warranty, condition, or provision." *See* TEX. INS.CODE ANN. art. 862.054. We have already concluded that describing the vacancy exclusion in terms of a breach or violation is a nonsequitur. Therefore, under the facts in the present case, the statute does not apply.

The history and purpose of the statute further informs our decision. The original version of the statute, enacted in 1913, was referred to as the "anti-technical" statute. *See Carnes,* 416 S.W.2d at 865. In *McPherson v. Camden Fire Ins. Co.,* 222 S.W. 211, 212 (Tex. Com.App.1920, holding approved), the court interpreted the statute as affecting only those warranties, conditions, and provisions in policies, the breach of which might have contributed to bring about the loss, but which did not. *Id.* In so holding, the court looked to the

---

1. The trial court did not specifically refer to section 862.054, but the court's order tracked the language of the statute.

2. While the Legislature's use of the disjunctive "or" typically connotes alternatives to be

treated separately, Texas courts consider the use of the word "or" against the backdrop of the entire statute. *See Underwriters at Lloyds of London v. Harris,* 319 S.W.3d 863, 866–67 (Tex.App.-Eastland 2010, no pet.).

purpose of the statute, as expressed in its title and emergency clause which stated:

> An Act to prevent fire insurance companies from avoiding liability for loss and damage to personal property under technical and immaterial provisions of the policy or contract of insurance where the act of breaching such provision has not contributed to bring about the loss....

*Id.* Focusing on the phrase "immaterial provisions," the court determined that the purpose of the act was not to "prevent fire insurance companies from incorporating ... provisions of any character or class, but to prevent such companies from avoiding liability under immaterial provisions." *Id.* at 213. The court concluded that "[i]t is thus apparent that the scope of the act is not unrestricted, and that not all policy provisions are intended to be brought within its purview." *Id.*

The 1913 version of the statute was eventually codified as article 6.14 of the insurance code. *See Carnes,* 416 S.W.2d at 865; TEX. INS.CODE ANN. art. 6.14 (West 1951), repealed by Acts 2001, 77th Leg, ch. 1419 § 31(a), eff. June 1, 2003. The purpose of the statute did not change, and continued to be described as an effort "to prevent insurance companies from avoiding liability under technical provisions of their policies." *See Holston v. Implement Dealers Mut. Fire Ins. Co.,* 206 F.2d 682, 685 (5th Cir.1953). Following the *McPherson* court's interpretation, courts determined the applicability of article 6.14 in terms of whether the provision in question was one in which the breach might have contributed to bring about a loss by fire, but which did not. *See Carnes,* 416 S.W.2d at 865. For example, in *Perez v. Los Fresnos State Bank,* 512 S.W.2d 796, 799 (Tex.Civ.App.-Corpus Christi 1974, writ ref'd n.r.e.), the court deemed the statute applicable to the insurer's defense

that the insured breached a warranty requiring a three-man crew on a boat. In reaching its conclusion, the court noted that the breach warranted against did not contribute to bring about the destruction of the vessel. *Id.* Courts also continued to rely on the *McPherson* court's conclusion that the applicability of the statute also turned on the materiality of the provision at issue. *See Carnes,* 416 S.W.2d at 865. Thus, in *Citizens State Bank v. American Fire & Casualty Co.,* 198 F.2d 57, 59 (5th Cir.1952), the court concluded that the statute had no application to a noncancellation provision because the cancellation clause was a material provision in the policy "violation of which could not, from its very nature, contribute to bring about the destruction of the property." *Id.* One court suggested that to test whether or not a provision in a policy is material to the insurance risk, courts should examine whether or not the insurance company would decline the insurance altogether or refuse to accept it unless it received a higher premium. *See Carnes,* 416 S.W.2d at 866.

When the Legislature recodified section 6.14 to section 862.054, it did so without substantive change. As noted in *AIG Aviation, Inc. v. Holt,* 198 S.W.3d 276, 281 (Tex.App.-San Antonio 2006, pet. denied), the bill analysis of the current statute and the corresponding House Committee report state "[t]he substance of the law has not been altered. The sole purpose of these provisions is to compile the relevant law, arrange it in a logical fashion, and rewrite it without altering its meaning or legal effect." *Id.* (citing HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 2811, 77th Leg., R.S. (2001)).

Although no Texas court has ever applied the current statute to real property or a vacancy clause, Greene urges that we apply the statute here because "Texas Su-

preme Court precedent and Texas public policy" require us to do so. In support of her argument, Greene relies primarily on *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984) and a decision out of our sister court in San Antonio. We are not persuaded by this argument.

*Puckett* involved the breach of a condition in an aviation policy requiring that an air worthiness certificate be in effect on insured aircraft. The policy specifically declared that "there is no coverage under the policy if the [certificate] is not in full force and effect." *Id.* at 938. When coverage was denied following a loss, the parties stipulated that the certificate on the aircraft had lapsed and that the failure to have the plane inspected in no way caused the accident. *Id.* at 937. The court acknowledged that the policy did not require a causal connection between the breach of the policy and the accident, but nonetheless concluded that "[i]t would be against public policy to allow the insurance company in that situation to avoid liability by way of a breach that amounts to nothing more than a technicality." *Id.* at 938. In support of its public policy rationale, the court relied on the anti-technicality statute, and stated "[w]e believe the legislature's action indicates the public policy of the state, and decline to hold to the contrary." *Id.*

But in a thoughtful dissent, Chief Justice Pope opined that the court had written a new clause into the policy. *Id.* at 940. He further observed that:

> Today's decision means that insurance policies ... though agreed upon by insured and insurer, though authorized by the Board of Insurance, though clear and unambiguous, are burdened with uncertain terms that this court may from time to time determine should have been included in the parties' contract ... Courts are not in the business of writing insurance contracts. Our duty is to apply unambiguous contracts as written.

*Id.* at 940.

Greene also relies on *AIG Aviation, Inc. v. Holt*, 198 S.W.3d 276, 280 (Tex.App.-San Antonio 2006, pet. denied). *Holt* involved a warranty provision in a property insurance policy that required pilots of insured aircraft to have certain flight experience. When an aircraft operated by a pilot without the requisite flight experience was damaged, the insurer denied the claim. The San Antonio court relied on *Puckett* to support its conclusion that a breach of the policy could not support a denial of coverage in the absence of a causal connection between the accident and the breach of warranty. *Id.* at 283. In so concluding, the court found *Puckett*'s public policy rationale was applicable "to prevent the insurer ... from obtaining a windfall by denying coverage for a risk it undertook to insure ..." *Id.* at 283.

Both *Holt* and *Puckett* are distinguishable from and do not control the instant case. Unlike the facts presented here, both *Holt* and *Puckett* involved the breach of a warranty or condition. Neither case involved a vacancy clause or real property. And the public policy rationale driving these decisions is inapplicable because the policy exclusion in the instant case is material and can not properly be characterized as a mere "technicality." *See Puckett*, 678 S.W.2d at 938.

■ To the contrary, the vacancy of the home involved an increased risk that FIE did not bargain for and expressly excluded from coverage. An insurance agreement is an aleatory contract in which the insurer assumes the risk that injury or property loss might occur in exchange for the premium payment. *See In re Texas Ass'n of School Boards, Inc.*, 169 S.W.3d

653, 658 (Tex.2005). The foundation of insurance is risk distribution, and premiums are a function of calculated risk. *Id.*

As the Fourth Circuit has observed, the "reason for vacancy exclusions in fire insurance policies is obvious: empty buildings without occupants or activities pose increased fire risks." *Catalina Enterprises, Inc. Pension Trust v. Hartford Fire Ins. Co.*, 67 F.3d 63, 67 (4th Cir.1995); *see also Heartland Capital Investments, Inc. v. Grange Mut. Cas. Co.*, 2010 WL 432333 at *4 (C.D.Ill. Feb. 2, 2010) (not designated for publication) (stating vacancy provision is to exclude structures which present higher risk than occupied buildings). In *Catalina,* the court noted that potential fire hazards in a vacant building are more likely to remain undiscovered or unremedied. *Catalina,* 67 F.3d at 67. There is also an increased likelihood that a fire in an occupied building will burn for a longer period and cause greater damage before being detected. *Id.* Therefore, the court held that "unless a policy intends to include the risk of insuring a vacant building, we must, when interpreting an exclusion for vacant buildings, remember the broader intention of the parties." *Id.*

■ Texas jurisprudence affords similar deference to the intentions of the parties to a contract. *See e.g., Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 745 (Tex. 2006) (enforcing homeowners policy as written). We defer to those intentions here. The vacancy was a condition of the property that FIE did not agree to insure for more than sixty days. Because FIE contracted to underwrite specific coverage and expressly restricted the transferred risk to exclude vacancy, the Policy contains no contractual duty to pay for damage to a vacant dwelling. Under these circumstances, we are loathe to engraft by judicial fiat additional terms requiring FIE to assume liability for a risk the Policy specifically excluded.

Accordingly, we conclude the trial court erred in its interpretation of the Policy and the applicability of section 862.054 to FIE's vacancy defense. FIE's first issue is sustained.[3]

## Summary Judgment on the Remaining Claims and Defenses

In its second issue, FIE contends the trial court erred in denying its summary judgment on the remainder of Greene's claims. Greene responds that judgment in her favor "was warranted on grounds other than that relied on by the trial court."

The trial court, however, very explicitly limited its summary judgment ruling to the applicability of FIE's vacancy clause defense to Greene's breach of contract claim, and severed "all remaining claims, causes of action and defenses of the parties not specifically ruled upon by the court." Therefore, the final judgment here does not include these claims and defenses, and they are not part of this appeal. FIE's second issue is overruled.

## III. Conclusion

The trial court's judgment awarding damages and attorney's fees based on the applicability of the vacancy clause defense to Greene's breach of contract claim is reversed. We render judgment that Greene take nothing on her damages and attorney's fees award based only on this narrow issue; specifically, that a vacancy

---

**3.** Because the trial court's determination was expressly limited to the vacancy clause as a defense to the breach of contract claim, our determination does not include Greene's claim that FIE is precluded from relying on the vacancy provision because FIE did not provide her with a copy of the Policy. As we understand the court's judgment and order on severance, this claim is among the claims severed from the instant case.

arising under the vacancy clause does not constitute a breach or violation of the Policy, and section 862.054 does not apply. Therefore, FIE is not required to establish that the vacancy caused or contributed to cause the loss before asserting the vacancy clause as a defense to the denial of coverage for damage to the dwelling.